

## NUMBER 13-05-446-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JACQUELINE MICHELLE WEDGEWORTH,          Appellant,

**v.**

CHRISTUS SPOHN HEALTH SYSTEMS
CORP., D/B/A CHRISTUS SPOHN
HOSPITAL SHORELINE,          Appellee.

**On appeal from the 105th District Court of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memordandum Opinion by Justice Yañez**

By three issues, appellant, Jacqueline Michelle Wedgeworth, challenges the summary judgment granted in favor of appellee, Christus Spohn Health Systems Corporation d/b/a Christus Spohn Hospital Shoreline ("Spohn"). Specifically, appellant contends the trial court erred in granting summary judgment in Spohn's favor on her claims

for (1) fraud and negligent misrepresentation, (2) violations of her due process rights, and (3) intentional infliction of emotional distress. We affirm, in part, and reverse and remand, in part.

## Factual Background

Appellant, a registered nurse, worked in Spohn's endoscopy unit between 1998 and 2002. Diane Kaiser, her supervisor, was in charge of the unit. According to appellant, Spohn's unwritten policy permitted nurses to perform a procedure known as "roll and sleep," which was used to prepare patients for an endoscopic procedure. Under the procedure, nurses—without the presence of a physician—sedated the patient, and with the assistance of an endoscopic technician, observed the insertion of a colonoscope up to the patient's cecum.[1]

On January 17, 2002, appellant was the nurse in charge of a colonoscopy to be performed by Dr. Fred Brackett. Pursuant to Spohn's policy and Dr. Brackett's orders, appellant sedated the patient and observed a technician insert the scope. At that point, appellant learned that Dr. Brackett had been detained and could not be present to perform the colonoscopy. Dr. Brackett instructed appellant by telephone to continue with the procedure and begin removing the scope. Appellant complied, and advised Dr. Brackett that she and the technician had discovered a small polyp. In accordance with the doctor's instructions, a second, more experienced technician removed the polyp. The doctor instructed appellant to continue removing the scope and complete the procedure. The entire procedure was performed without Dr. Brackett's presence or supervision.

---

[1] The cecum is a large pouch forming the beginning of the large intestine.

2

Approximately a week later, Kaiser learned of the incident and requested that appellant meet with her and Sarah McMullar, Spohn's risk-management officer. Following the meeting, appellant was placed on paid administrative leave for several days; the matter was referred to Spohn's Peer Review Committee. At the conclusion of the peer review process, appellant was told that the incident was referred to the State Board of Nurse Examiners. Following a second paid administrative leave, appellant returned to work, but was told not to return to the endoscopy unit because her presence would be disruptive; instead, she was assigned to a position reviewing charts in the quality assurance department. Eventually, the State Board investigation of the matter concluded with no adverse action taken against appellant.

### Procedural Background

Appellant sued Spohn, alleging fraud, negligent misrepresentation, violation of her procedural due process rights, and intentional infliction of emotional distress. Spohn filed a motion asserting both traditional and no-evidence grounds for summary judgment. In support of its motion, Spohn attached evidence, consisting of (1) appellant's deposition testimony, (2) the "Employee Discipline Report" issued by Spohn to appellant, (3) Kaiser's deposition testimony, and (4) deposition testimony by Nora Frazier, Spohn's chief nurse executive.

In its no-evidence motion, Spohn contends appellant's claim for violation of her due process rights fails because there is no evidence that a private right of action exists for alleged violations of peer review procedures.[2] With regard to appellant's fraud claim,

---

[2] Appellant bases her claim that her procedural due process rights were violated on her contention that Spohn's peer review process was flawed.

Spohn contends there is no evidence (1) that Spohn made a material representation that was false, (2) that Spohn made such a representation knowing it was false or with reckless disregard as to its falsity, or (3) that appellant actually or justifiably relied on the alleged misrepresentation. As to appellant's negligent misrepresentation claim, Spohn contends there is no evidence (1) that it made a false representation, (2) that it acted negligently in communicating its policies, or (3) that appellant relied upon the alleged misrepresentation. With regard to appellant's intentional infliction claim, Spohn contends there is no evidence (1) that its conduct was extreme or outrageous or (2) that appellant suffered severe emotional distress. In its traditional motion, Spohn challenged the same elements of appellant's claims.

In support of her response, appellant attached (1) her own affidavit; (2) excerpts from Frazier's deposition testimony; (3) excerpts from Kaiser's deposition testimony; (4) minutes from several staff meetings of the endoscopy unit; (5) excerpts from her own deposition testimony, and attachments to her testimony; (6) Spohn's "Statement of Ethics" and its nursing peer review policies; and (7) three "expert reports" supporting various aspects of appellant's allegations.

Following a hearing on March 1, 2005, the trial court announced on April 8, 2005, that it was granting Spohn's motion for summary judgment. On April 11, 2005, the trial court signed an order granting judgment in Spohn's favor without stating the grounds for the ruling. This appeal ensued.

### Standard of Review and Applicable Law

The standard of review for the grant of a motion for summary judgment is

determined by whether the motion was brought on no-evidence or traditional grounds.[3]  A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review.[4]  In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences.[5]  If the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper.[6]

All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact.[7]  "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'"[8]  Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."[9]  In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could

---

[3] *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g).

[4] *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772.

[5] *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega*, 97 S.W.3d at 772.

[6] TEX. R. CIV. P. 166a(i).

[7] *Ortega*, 97 S.W.3d at 772.

[8] *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

[9] *Id.* (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

not.[10] The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion.[11] We may not consider any evidence presented by the movant unless it creates a fact question.[12]

When a party moves for summary judgment under both rules 166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of rule 166a(i).[13] If the appellant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the less stringent rule 166a(c) burden.[14]

### Fraud

By her first issue, appellant contends the trial court erred in granting summary judgment in Spohn's favor on her fraud and negligent misrepresentation claims. We begin by addressing appellant's challenge to the summary judgment in Spohn's favor as to her fraud claim.

To prove a fraud claim, a plaintiff must show (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other

---

[10] *Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 827.

[11] TEX. R. CIV. P. 166a(i).

[12] *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).

[13] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

[14] *Id.*

party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[15] In its no-evidence motion, Spohn argued that appellant lacked any evidence that Spohn (1) falsely represented its delegation policy, (2) intended to deceive appellant, or (3) knew the alleged representations regarding its policy were false. Spohn also argued there was no evidence appellant justifiably relied on any representation concerning Spohn's delegation policy.

In her response, appellant asserts that Spohn (specifically, Kaiser) falsely represented to her that "[n]urses and staff could perform any delegated task that the nurses and staff were qualified and comfortable performing."[16] In the section of her response addressing fraud, appellant cites no evidence that Kaiser intended to deceive her in communicating the delegation policy to her. Similarly, in her appellate brief, appellant asserts that "[e]vidence attached to Spohn's motion for summary judgment, as well as [her] own evidence" establishes that Kaiser intended to deceive her. However, appellant cites no evidence in the record supporting this element of her fraud claim. We conclude that appellant presented no evidence of Spohn's intent to deceive. Accordingly, we hold the trial court did not err in granting summary judgment in Spohn's favor as to appellant's fraud claim. We overrule that portion of appellant's first issue challenging summary judgment as to her fraud claim.

## Negligent Misrepresentation

---

[15] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

[16] Appellant cites "Kaiser Dep. Pg. 47." We note that although appellant attached excerpts of Kaiser's deposition testimony to her response, she did not attach any of the excerpted pages cited in her response. The portions of Kaiser's deposition testimony cited by appellant in support of her response are included in Spohn's summary judgment evidence.

7

Appellant's first issue also challenges the summary judgment granted in Spohn's favor as to her claim for negligent misrepresentation. "The elements of a cause of action for [negligent misrepresentation] are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."[17]

Appellant contends that Kaiser misrepresented Spohn's delegation policy to her. As to the first element, regarding Spohn's pecuniary interest in making the misrepresentation, appellant presented seven deposition exhibits, reflecting minutes from several "Endoscopy Associate Meetings," between July 31, 2001 and February 4, 2002. The minutes reflect Spohn's concern for being "above budget" in the volume of patients processed through the endoscopy unit.

As to the "false information" element and Spohn's failure to exercise reasonable care in communicating the delegation policy, appellant relies on Kaiser's misrepresentation to her that (1) "[n]urses and staff could perform any delegated task that they were qualified to perform and were comfortable in performing, and (2) the doctor was ultimately responsible for all tasks delegated." Appellant offered evidence establishing that the delegation policy was unclear. Nora Frazier, the chief nurse executive and "integrity officer" in charge of investigating whether procedures that should have been performed

_____

[17] *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex. 2002) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

8

by doctors were, in fact, being performed by nurses, testified as follows:

A [Frazier]: Couple of reasons. Number one, my understanding of Michelle's record is that it was a good record, that she was a good nurse—is a good nurse, who was in a situation where there were some gray areas with respect to practice. And I do believe that there were some mitigating factors in the whole incident for which we as a system have some responsibility.

Q [counsel]: Okay. And what were those mitigating factors, in your opinion?

A: I think the fact that the scope of nursing practice boundaries, as I mentioned earlier, were fuzzy. That, you know, perhaps the whole issue of delegated medical acts and what was appropriate or inappropriate had not been embedded thoroughly from a Board of Nursing standpoint. It's fine to know what the Board of Nurse Examiners feels is appropriate, but no one queried the Board of Nurse Examiners to find out what they felt was appropriate or not appropriate for nursing practice. And so for those reasons, I felt that it was appropriate to try to help Michelle.

Q: Okay. Would it be fair to say that something that caused everything to be kind of fuzzy was the lack of clear and precise policies and procedures within the unit with regard to roll and sleep and what duties could be delegated?

A. Yes.

Similarly, Kaiser testified that she sought advice from Margaret O'Donnell, Spohn's counsel, as to what tasks a physician could properly delegate; Kaiser testified that it wasn't a "black and white" situation. Based on the response from O'Donnell, Kaiser testifed that the policy was "physicians can delegate if they feel like the person is competent, comfortable, that they're not representing themselves as a physician." After the incident, Kaiser testified that several doctors approached her and said that the practice of doctors ordering nurses to start a procedure without the doctor being present was "just not right" and that it was "about time that [the practice] came to somebody's attention." When asked what alternatives were available to appellant when Dr. Brackett instructed her to begin withdrawing the scope, Kaiser testified that the alternative was to have "never started the

9

procedure."

The minutes of the Endoscopy Associate Meeting dated February 4, 2002, (approximately two weeks after the incident at issue) reflect the following notation regarding the delegation policy:

Policies and Procedures

Reviewed the conscious sedation policy and procedure. Also discussed the policy and procedures for endoscopic manipulation of the endoscope during procedure. This policy is still being written, but at present the procedure is not to be started without the physician present in the room. Conscious sedation is not to be administered without the physician present in the room and the scope is not to be inserted into the patient without the physician in the room. All associates are to follow these procedures.

We conclude there is evidence that Spohn was aware that some physicians were ordering nurses to start procedures without the physician being present, knew there were no clear and precise policies and procedures within the unit as to what duties could be delegated, and did not attempt to clarify the delegation policy until *after* it began investigating the incident. We conclude the evidence raises a fact issue regarding whether Spohn negligently communicated its delegation policy because there was no clear policy.

With regard to whether appellant suffered pecuniary loss because she justifiably relied on Spohn's representation of its policy, appellant testified that even though she felt it was improper to begin a procedure without the doctor being present, she followed Dr. Brackett's order because he had said he would assume responsibility for it. The incident occurred on January 17, 2002; the investigation by the Board of Nurse Examiners was not concluded until July 2003. Appellant testified that she did not work as a nurse during the pendency of the investigation because she was "embarrassed," "uncertain of the outcome," and did not want to reveal the investigation to a prospective employer.

10

Reviewing the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not,[18] we hold that appellant presented more than a scintilla of evidence raising a genuine issue of material fact as to each element of her negligent misrepresentation claim.[19] Accordingly, we hold the trial court erred in granting summary judgment in Spohn's favor as to appellant's negligent misrepresentation claim. We sustain that portion of appellant's first issue, and reverse the summary judgment as to that claim.[20]

## Violation of Due Process Rights

By her second issue, appellant contends that Spohn violated her procedural due process rights by failing to follow its own policies and procedures. Specifically, appellant contends that Spohn's investigation of the incident denied her certain rights and guarantees outlined in Spohn's peer review process. Appellant argues her due process rights are implicated because she has a property interest in her employment and her nursing license.

---

[18] *See City of Keller*, 168 S.W.3d at 827.

[19] *See Ortega*, 97 S.W.3d at 772.

[20] Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the judgment if any of the theories advanced by the movant are meritorious. *Vargas v. K.K.B., Inc.*, 52 S.W.3d 250, 254 (Tex. App.–Corpus Christi 2001, pet. denied). Spohn moved for traditional summary judgment on Wedgeworth's negligent misrepresentation claim, contending that it had:

> conclusively negated three of the elements of [Wedgeworth's] negligent misrepresentation cause of action. In particular, [Spohn] has established that it did not supply false information to [Wedgeworth]; that it did not fail to exercise reasonable care or competence in communicating the information to [Wedgeworth]; and that [Wedgeworth] did not actually or justifiably rely on [Spohn's] alleged misrepresentation.

Spohn presented no analysis explaining how its evidence "conclusively negated" the identified elements of Wedgeworth's claim. Nonetheless, for the reasons detailed above, we hold that Spohn failed to conclusively negate the elements of Wedgeworth's negligent misrepresentation claim. Accordingly, we hold that the trial court could not properly have granted Spohn's traditional motion for summary judgment as to that claim.

11

In its motion, Spohn argued it is entitled to summary judgment on appellant's violation of due process claim because there is no private right of action alleging a violation of the Texas Nursing Practice Act ("TNPA"),[21] including alleged violations of peer review procedures. According to Spohn, the TNPA peer review requirements are identical to those applicable to physicians under the Texas Medical Practice Act ("TMPA");[22] because no private right of action exists under the TMPA,[23] no private right of action exists under the TNPA.

In her response, appellant simply details the various alleged violations of Spohn's policies and procedures. With respect to Spohn's assertion that no private right of action exists under the TNPA, appellant "does not rely upon the [TNPA] as a basis for her action." Appellant argues that she has a claim for violation of her due process rights "not under the [TNPA], but with relation to the policies and procedures created by [Spohn] with regard to the due process that should have been afforded to [her]." Thus, appellant asserts that Spohn violated her procedural due process rights by failing to follow its own policies and procedures. However, appellant cites no evidence in support of her position that "a cause of action exist[s]" based on Spohn's alleged violations of its "policies and procedures." We conclude that appellant presented no evidence in response to Spohn's challenge to appellant's claim that her due process rights were violated. The trial court did not err in granting judgment in Spohn's favor as to this claim. We overrule appellant's second issue.

---

[21] *See* TEX. OCC. CODE ANN. §§ 301.001-.607 (Vernon 2004 & Supp. 2007).

[22] *See id.* §§ 160.001-.102 (Vernon 2004 & Supp. 2007).

[23] *See Cole v. Huntsville Mem'l Hosp.,* 920 S.W.2d 364, 373 (Tex. App.–Houston [1st Dist.] 1996, writ denied) (holding no private right of action exists under TMPA).

**Intentional Infliction of Emotional Distress**

In her third issue, appellant contends the trial court erred in granting summary judgment in Spohn's favor as to her claim for intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the plaintiff suffered severe emotional distress.[24] A defendant's conduct satisfies the second element only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[25] In its motion, Spohn challenged the second and fourth elements, arguing there was no evidence (1) its alleged actions were extreme and outrageous or (2) that appellant suffered severe emotional distress.

With respect to the challenged fourth element—that appellant suffered severe emotional distress—appellant responded:

> There is evidence to show that [appellant] is mentally unable to seek employment as a nurse due to the treatment of [appellant] by [Spohn] and the fear that this could happen again, and there is evidence in the record that this type of action by [Spohn] could cause severe emotional trauma similar to post-traumatic stress syndrome.

The "evidence" cited by appellant is an "expert report," which states, in relevant part, "[t]hreat of loss of licensure for a professional is an extremely stressful and traumatic event. The professional can experience symptoms very similar to Post Traumatic Stress Disorder

---

[24] *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

[25] *Id.* (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965))).

and Major Depression." The report does not mention appellant specifically, nor does it state that appellant has suffered any emotional distress. Appellant cites no other evidence in support of her assertion that she suffered severe emotional distress. We conclude appellant presented no evidence that she suffered severe emotional distress. Accordingly, the trial court did not err in granting summary judgment in Spohn's favor on appellant's claim for intentional infliction of emotional distress. We overrule appellant's third issue.

## Conclusion

We reverse the trial court's summary judgment in Spohn's favor as to appellant's negligent misrepresentation claim and remand to the trial court for further proceedings. As to appellant's claims for fraud, violation of her due process rights, and intentional infliction of emotional distress, we affirm the trial court's judgment in Spohn's favor.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 10th day of April, 2008.